UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

|  |  |  |
|---|---|---|
| NORTHERN VIRGINIA EYE INSTITUTE, P.C., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 5:21-cv-00008 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| CYNOSURE, LLC, *et al.*, | ) ) ) | By:  Hon. Thomas T. Cullen United States District Judge |
| Defendants. | ) | |

When Plaintiff Dr. Tayyib Rana, an ophthalmologist, was solicited by two sales representatives to purchase a medical device under Cynosure, LLC's TempSure RF platform ("TempSure")—"a family of devices which generate and direct radiofrequency waves for therapeutic and cosmetic ends"—they promised him 40 radial miles of geographic exclusivity as to other ophthalmologists. (Compl. ¶ 19 [ECF No. 1-1].) After meeting with a third Cynosure representative—and while relying on the promise of geographic exclusivity—Dr. Rana agreed to purchase the TempSure. But he later discovered that Cynosure had sold the TempSure to one of his direct competitors within 40 radial miles. Dr. Rana filed suit against two corporate defendants, Cynosure and Hologic, Inc., and the three Cynosure sales representatives, Aldo Batubara, Brogan Bair, and Robert Daley (collectively, "Defendants"). Daley has moved to dismiss the claims against him. For the reasons stated below, the court will grant Daley's motion to dismiss.

1

#### I.     BACKGROUND

The following alleged facts are taken from Plaintiffs' complaint, and they are accepted as true for purposes of this motion.

Dr. Rana is a board-certified ophthalmologist practicing in Winchester, Virginia, and he is the principal of Northern Virginia Eye Institute, P.C. On January 29, 2019, Aldo Batubara, a Cynosure sales representative, visited Dr. Rana to promote the TempSure. Dr. Rana expressed interest in purchasing the device, but he was concerned about oversaturating the relevant market if Cynosure sold the device to other ophthalmologists in the area. In response, Batubara allegedly represented that if Dr. Rana purchased the device, Cynosure would grant him "geographic exclusivity" with respect to ophthalmology. Specifically, Batubara promised that Cynosure would not sell the TempSure to another ophthalmologist within 40 radial miles of Dr. Rana's Winchester office.

The next day, Dr. Rana met with Cynosure's district sales manager for the Washington, D.C. area, Brogan Bair. Dr. Rana raised the same concerns with Bair, who responded by saying that "no one else had the [TempSure platform] in the [Northern Shenandoah Valley] area." (*Id.* ¶ 31 (alterations in original).) Bair then "reiterated and reaffirmed" Batubara's promise of geographic exclusivity. (*Id.* ¶ 32.) When Dr. Rana had misgivings about the $100,000 price for the TempSure, Bair arranged a meeting between Dr. Rana and "her ostensible superior, [Robert] Daley, who held the title of Cynosure's director of east coast sales." (*Id.* ¶ 34.)

Almost two weeks later, on February 11, 2019, Dr. Rana met with Daley. When Dr. Rana expressed concern about the price and the TempSure's lack of an "imaging device"—

which is necessary to determine if treatments are effective—Daley offered to reduce the price to $80,000 if Dr. Rana paid $20,000 by check that night. Daley also offered to provide Dr. Rana with $10,000 to be used towards purchasing a secondary imaging device. When Dr. Rana asked for time to decide, Daley refused and told Dr. Rana that he needed a decision "on the spot." (*Id.* ¶ 40.) Otherwise, Daley would sell the TempSure to other interested physicians. Despite Dr. Rana's reservations, "in reliance on Batubara's and Bair's promise of [g]eographic [e]xclusivity and with the expectation that he would be granted the same if he purchased the TempSure, [Dr. Rana] accepted Daley's offer with a handshake." (*Id.* ¶ 42.) Dr. Rana and Daley executed a purchase agreement.[1] When Dr. Rana asked Daley how to pay the remaining balance, Daley replied that they would "figure something out." (*Id.* ¶ 45.)

After the TempSure was delivered to Dr. Rana's office, but before he was able to use it, he discovered an advertisement for TempSure treatments by a local competitor, Dr. Alla Hynes. Dr. Hynes is another board-certified ophthalmologist whose office is "mere minutes" from Dr. Rana's Winchester office. (*Id.* ¶ 51.) Dr. Rana contacted Dr. Hynes, who confirmed that she had also entered into a contract with Cynosure on approximately January 19, 2019 (prior to Batubara approaching Dr. Rana on January 29), for the TempSure and another Cynosure laser device. Bair and another Cynosure employee, Scott Hill, had also promised Dr. Hynes the same geographic exclusivity promised to Dr. Rana. He and Dr. Hynes concluded they had been swindled.

When Dr. Rana confronted Bair, she began avoiding Dr. Rana and became unresponsive after Dr. Rana's repeated attempts to contact her. Dr. Rana was able to contact

---

[1] The purchase agreement is attached to the complaint. (ECF No. 1-1 at 15.)

Cynosure's "post-sales national manager," Michael Russo. (*Id.* ¶ 65.) After explaining the situation, Russo allegedly stated that Cynosure "would never promise exclusivity" and "would never offer any sort of mileage restrictions on the sale or use of the device." (*Id.* ¶ 67.) That was the last communication Dr. Rana had with any Cynosure representative.

Plaintiffs brought claims for (1) fraud (against all Defendants), (2) constructive fraud (against all Defendants), and (3) breach of contract (against Cynosure and Hologic). Daley has moved to dismiss the two claims against him—fraud and constructive fraud—under Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Additionally, claims sounding in fraud are subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or

4

mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "The circumstances required to be pled with particularity are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 343–44 (4th Cir. 2013) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

### III. ANALYSIS

#### A. Legal Framework for Fraud and Constructive Fraud

Under Virginia law, a party bringing a fraud claim must allege the following six elements: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance. *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994). The elements for constructive fraud are the same, except the third element—that the statement was made intentionally and knowingly—is not required. *See Henderson v. Henderson*, 495 S.E.2d 496, 499 (Va. 1998). Rather, an innocent or negligent misrepresentation can be the basis for a constructive fraud claim. *Id.*

Where fraud is premised on an omitted statement or representation—called "fraud by concealment" or "fraud by omission"—the plaintiff must provide "an allegation or evidence of a knowing and deliberate decision not to disclose a material fact." *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998). Daley correctly points out—and Plaintiffs admit—that the two claims against Daley are for fraud by omission. (*See* ECF No. 18 at 3 ("Daley's motion also

5

correctly notes that Rana's claims against Daley are a sub-species of fraud: fraud by omission.").)

**B.     Count I: Fraud**

Daley argues that Plaintiffs have failed to properly plead a claim for fraud by omission under the heightened pleading standards of Rule 9(b). The court agrees.

The only factual allegations in the complaint regarding Daley are: (1) that he met with Dr. Rana on February 11, 2019; (2) that Daley discussed a business partnership with Dr. Rana; (3) that when Dr. Rana expressed concerns about the TempSure's price, Daley offered to reduce the price from $100,000 to $80,000 if Dr. Rana paid $20,000 by check that night, and he offered Dr. Rana $10,000 towards a second imaging device; (4) that "in reliance on *Batubara's and Bair's* promise of [g]eographic [e]xclusivity and with the expectation that he would be granted the same if he purchased the TempSure, Rana accepted Daley's offer with a handshake"; (5) that Daley presented Dr. Rana with a contract, which they both signed; and (6) that when Dr. Rana asked Daley about paying the remaining balance, Daley responded that they would "figure something out." (Compl. ¶¶ 35–45 (emphasis added).) The complaint then alleges in a conclusory fashion that Dr. Rana "relied" on Daley's "false representations and/or omissions," and that Daley "knew" that Cynosure would not honor Batubara's and Bair's promises of geographic exclusivity. (*See id.* ¶¶ 77, 79, 85.)

In *Norris v. Mitchell*, the Virginia Supreme Court considered fraud by omission. 495 S.E.2d at 812. In that case, the sellers (defendants) contracted with the purchasers (plaintiffs) to sell a home, but the contract was contingent upon a satisfactory septic inspection. *Id.* at 810. After the inspection revealed that the septic system was not working, the seller's real

6

estate agent arranged for repairs with a contractor, who obtained a construction permit with the following provisions: "Recommendations: Summertime use, no laundry, aerated faucets, low flush toilets[.] *Conserve water.*" *Id.* (alteration and emphasis in original). When the contractor finished his work, the purchasers were informed of the repairs but were not given a copy of the construction permit. *Id.* at 810–11. Further, no one informed the purchasers of the construction permit's limitations prior to closing, even though they advised the seller's real estate agent that their son would live there on a year-round basis. *Id.* at 811.

After the parties finalized the purchase of the home, and the purchasers' son started living there, he experienced issues with the toilet. *Id.* The purchasers asked the seller's real estate agent for a copy of the construction permit; upon reviewing it, they became aware of the restrictive language. *Id.* When the purchasers were advised that it would cost a significant amount of money to upgrade the septic system to be suitable for year-round living, they sued the sellers and the attorney who represented all the parties at the closing for fraud. *Id.* The circuit court sustained the defendants' demurrers on the fraud claim. *Id.*

On appeal, the purchasers argued that the sellers committed fraud when they did not disclose the limitations on the construction permit before closing. *Id.* at 812. The Virginia Supreme Court disagreed, concluding that "an allegation or evidence of a *knowing and a deliberate* decision not to disclose a material fact" is necessary for a fraud-by-omission claim. *Id.* (emphasis added). Because the purchasers in *Norris* did not allege "a deliberate decision" on behalf of the sellers "to conceal from the purchasers the limitations of use noted on the construction permit" and "the purchasers [did] not allege that the sellers did anything to divert them from inspecting the permit," the court found that the purchasers had not alleged

7

a viable fraud-by-omission claim. *Id.* at 812–13.

Here, Plaintiffs allege in a conclusory fashion that Daley "knew" about Batubara's and Bair's promises of geographic exclusivity and that Cynosure would not honor those promises. But the complaint is devoid of any factual allegations that Daley was aware of Batubara's and Bair's respective promises, or that Daley and Dr. Rana even *discussed* geographic exclusivity (and therefore that Daley *could* have deliberately failed to disclose a material representation). Plaintiffs attempt to save the claim by quoting the complaint and stripping out references to the other defendants, but that misconstrues the *factual* allegations in the complaint. Moreover, Plaintiffs allege for the first time in their opposition that "[a]s Batubara's and Bair's superior, Daley knew that both had previously falsely represented to Rana that he would be granted regional exclusivity if he purchased a TempSure, but intentionally and deliberately failed to disclose to Rana that he would not in fact receive regional exclusivity." (ECF No. 18 at 2.) But this belated attempt to fill the gaps in the complaint is insufficient to survive Daley's motion to dismiss. Plaintiff's complaint, on its own, fails to sufficiently plead a fraud-by-omission claim against Daley.

Given the factual assertions in Plaintiffs' brief in opposition, it appears to the court that Plaintiffs' failure may be the result of inartful pleading. The court will therefore grant Daley's motion to dismiss as to Count I but allow Plaintiffs to file an amended complaint, if they so choose.

**C. Count II: Constructive Fraud**

As noted above, the parties agree that Plaintiffs' claims against Daley are for fraud by omission. Daley argues that there is no claim for "constructive fraud by omission" in

8

Virginia. Plaintiffs do not address this argument in their opposition.

As a matter of common sense and logic, Daley's argument must be correct. As discussed above, fraud by omission requires that the non-disclosing party deliberately fails to disclose a material representation. *See Norris*, 495 S.E.2d at 812–13; *see also Van Deusen*, 441 S.E.2d at 209 ("[F]or purposes of an action for fraud, *concealment*, whether accomplished by word or conduct, may be the equivalent of a false representation, because concealment *always involves deliberate nondisclosure designed to prevent another from learning the truth*. A contracting party's *willful* nondisclosure of a material fact that he knows is unknown to the other party may evince an *intent* to practice actual fraud." (emphasis added)). On the other hand, constructive fraud—as opposed to actual fraud—captures *negligent* (but otherwise innocent) omissions. *See Henderson*, 495 S.E.2d at 499. These cannot overlap.

Virginia and Fourth Circuit caselaw also supports Daley's argument. While the Virginia Supreme Court has not explicitly ruled on this issue, a Virginia circuit court—in sustaining a demurrer for fraud by concealment—held "that reckless or negligent nondisclosure is not actionable. There cannot be constructive fraud by concealment." *Denton V. Browntown Valley Assocs. v. Weichert Co. of Va.*, 98 Va. Cir. 486 (2015); *see also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) ("[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable."). Because constructive fraud by concealment is not a viable claim under Virginia law, the court will dismiss Count II against Daley with prejudice.

## IV. CONCLUSION

In sum, the court will grant Daley's motion to dismiss (ECF No. 11). Specifically, Count I will be dismissed without prejudice as to Daley, and Plaintiffs will be granted leave to amend. Count II will be dismissed with prejudice. A separate order will issue.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 20th day of April, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE